# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA

v.                                                        Criminal Action No. 3:08cr187

GREGG BRAXTON,

      Petitioner.


## REPORT AND RECOMMENDATION

This matter comes before the Court for an evidentiary hearing and a Report and Recommendation as to the Motion to Vacate, Set Aside, or Correct a Sentence filed pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") by Gregg[1] Braxton, a federal prisoner. On December 3, 2012, the Court held an evidentiary hearing.[2] The parties have submitted post-hearing proposed findings of fact and conclusions of law (ECF Nos. 61, 62), and the matter is ripe for disposition. For the following reasons, the Court RECOMMENDS that Braxton's claim of ineffective assistance of counsel based on his attorney's failure to file an appeal as instructed be DISMISSED, and the § 2255 motion to correct his sentence be DENIED.

### I. Factual and Procedural Background

On April 21, 2008, a federal grand jury indicted Braxton in a one-count criminal Indictment. (ECF No. 1.) The Indictment charged Braxton with conspiracy to possess with

---

[1] The docket sheet and court orders reflect Braxton's first name is Gregg, however, Braxton twice spelled his name as "Greg" on a March 20, 2009 envelope with his return address and on a February 2009 letter sent to the District Court judge before sentencing. Also, Braxton's sister, Jennifer Bussey, spelled Braxton's first name as "Greg" in her affidavit.

[2] This Court initially scheduled the evidentiary hearing for November 5, 2012. (ECF No. 48.) However, because of inclement weather, this Court rescheduled the hearing for December 3, 2012. (ECF No. 55.)

intent to distribute and distribution of more than fifty (50) grams of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846. Braxton retained Reuben Voll Greene to represent him throughout his criminal proceedings, and on August 25, 2008, Greene entered a Notice of Appearance in Braxton's case. (ECF No. 4; Evid. Hr'g Tr. ("Evid Hr'g Tr.") 44:11-16, Dec. 3, 2012, ECF No. 60.) On September 12, 2008, the District Court arraigned Braxton. Braxton pled not guilty and the District Court set his jury trial for November 17, 2008.

On October 21, 2008, a federal grand jury indicted Braxton in a three-count Superseding Indictment. (ECF No. 16.) Count One charged Braxton with conspiracy to distribute and possess with intent to distribute more than fifty (50) grams of a substance containing a detectable amount of cocaine base and more than five (5) kilograms of a substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), and 846. Count Two charged Braxton with interstate travel in aid of an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3). Count Three charged Braxton with aiding and abetting another to possess with intent to distribute five hundred (500) grams of a substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 18 U.S.C. § 2.

On November 3, 2008, Braxton pled guilty to Count One of the Superseding Indictment pursuant to a written Plea Agreement (ECF No. 21) and Statement of Facts (ECF No. 22). (*See* Guilty Plea Hr'g Tr. ("Guilty Plea Hr'g Tr.") 19:17-22, Nov. 3, 2008, ECF No. 53.) The court scheduled Braxton's sentencing for February 6, 2009. (Guilty Plea Hr'g Tr. 20:21-24.)

On February 6, 2009, the Honorable Henry E. Hudson sentenced Braxton to 300 months of imprisonment and entered judgment on February 9, 2009. (Judgment Order, ECF No. 34;

Sentencing Hr'g Tr. ("Sent. Hr'g Tr.") 20:5-10, Feb. 6, 2009, ECF No. 52.) This sentence fell within the advisory sentencing guideline range and below the statutory maximum. (Sent. Hr'g Tr. 4:19-21.) Braxton did not file an appeal.

On October 13, 2010, the Court received Braxton's § 2255 motion.[3] (ECF No. 35.) By Memorandum Order entered September 6, 2012, the District Court referred Braxton's ineffective assistance of counsel claim to the undersigned Magistrate Judge for an evidentiary hearing. (ECF No. 45.) The District Court withheld decision on the second claim raised in Braxton's § 2255 motion until resolution of his ineffective assistance of counsel claim. (*Id.*)

This Court ordered that counsel be appointed to Braxton and an evidentiary hearing be scheduled. (ECF No. 46.) On December 3, 2012, the Court held an evidentiary hearing.

## II. Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967) (citing *Bates v. Meadows*, 358 F.2d 674, 675 (6th Cir. 1996)); *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004) (citations omitted). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses and

---

[3] Braxton raised two grounds in his motion: (1) "ineffective assistance of counsel" due to counsel's failure to file a notice of appeal as directed; and (2) "impediment removed," asserting he can challenge his career offender status based on *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010). (§ 2255 Mot. 4-5, ECF No. 35; Mem. Supp. § 2255 Mot. ("Mem. Supp. § 2255 Mot.") 2, 4-5, ECF No. 36.)

3

reliability of other evidence. *See United States v. Roane*, 378 F.3d 382, 393-94, 409 n.15 (4th

Cir. 2004).

## III. Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of

fact based on the record, as well as the testimony and exhibits submitted at the evidentiary

hearing.

### A.    Braxton's Guilty Plea

1.     Before Braxton pled guilty, Greene and Braxton "discussed [the Plea Agreement]

in great detail." (Evid. Hr'g Tr. 45:9-11.) Braxton acknowledged that Greene explained the

waiver of appeal provision before Braxton entered his plea. (Evid. Hr'g Tr. 24:18-21.) When

asked about their discussions regarding the Plea Agreement, Greene testified as follows:

> I certainly can recall specifically that we met for that first meeting
> after – after I received [the agreement], and went over the whole
> thing.  Now, I'm pretty sure we had subsequent meetings
> pertaining to his case, and we would have reviewed it again, but I
> can't tell you specifically today – this was some years ago –
> exactly how many times we went back over it.

(Evid. Hr'g Tr. 56:15-21.)

2.     On November 3, 2008, the Honorable Henry E. Hudson conducted Braxton's plea

colloquy, during which Braxton pled guilty to Count One of the Superseding Indictment. (ECF

No. 53.)

3.     Under oath, Braxton informed the District Court that he had a sufficient

opportunity to discuss the case with Greene and was satisfied with Greene's representation:

> The Court:    Prior to coming to court today I assume that you
> and your attorney, Mr. Greene, have gone over this
> charge of conspiracy to distribute, and possession
> with the intent to distribute, 50 grams or more of

4

|                |                                                                                                      |
| -------------- | ---------------------------------------------------------------------------------------------------- |
|                | cocaine base, and 5 kilograms or more of cocaine hydrochloride, is that correct?                     |
| Mr. Braxton:   | Yes.                                                                                                 |
| The Court:     | Are you entirely satisfied with his services?                                                       |
| Mr. Braxton:   | Yes.                                                                                                 |
| The Court:     | Has he done everything reasonable in connection with this case that you have asked him to do?        |
| Mr. Braxton:   | Yes.                                                                                                 |

(Guilty Plea Hr'g Tr. 4:3-16.)

4.      During his plea colloquy, Braxton averred that he decided to plead guilty to the charge because he was in fact guilty of conspiracy to distribute and possess with intent to distribute more than fifty (50) grams of cocaine base and more than five (5) kilograms of cocaine hydrochloride. (Guilty Plea Hr'g Tr. 6:17-7:2.) At the evidentiary hearing, Braxton reconfirmed he was guilty of the charge. (Evid. Hr'g Tr. 24:7-9.)

5.      Braxton signed the written Plea Agreement, indicating that he had carefully read and understood it, reviewed it with his attorney, and voluntarily agreed to it. (Plea Agreement 13.) Braxton also acknowledged this under oath during the plea colloquy. (Guilty Plea Hr'g Tr. 7:22-8:11.) When asked whether there was "[a]nything about this document, or its contents, that you did not understand," Braxton responded, "No." (Guilty Plea Hr'g Tr. 8:9-11.)

6.      Braxton also signed the Statement of Facts, indicating that he had reviewed them with his attorney and agreed to the truthfulness and correctness of the stated facts. (Statement of Facts 5.) Braxton confirmed this under oath during the plea colloquy. (Guilty Plea Hr'g Tr. 18:3-24.)

7.     Judge Hudson questioned Braxton regarding his possible punishment and his

understanding of the guidelines:

> The Court:     Mr. Braxton, what is . . . the mandatory minimum
>                sentence on this charge?
>
> Mr. Braxton:   Ten years.
>
> The Court:     This count carries a mandatory minimum of 10
>                years, a maximum of life, a fine up to $4 million,
>                five years of supervised release, and a special
>                assessment of $100.
>                        Have you and Mr. Greene gone over where
>                your case comes out on the federal criminal
>                sentencing guidelines?
>
> Mr. Braxton:   Yes.
>
> The Court:     All right. Well, as he has told you, the guidelines
>                are advisory only, but I'm required to begin my
>                calculation of your sentence by computing your
>                guidelines, then I weigh those guidelines against all
>                the factors set forth in 18, United States Code,
>                Section 3553(a). . . .
>                        . . . .
>                [D]o you understand that?
>
> Mr. Braxton:   Yes.

(Guilty Plea Hr'g Tr. 14:17-15:8; 16:6-9.)

> The Court:     The decisions that I make on the guidelines are final, do
>                you understand that?
>
> Mr. Braxton:   Yes.
>
> The Court:     Basically, as long as I sentence you, no matter how
>                unfair it may be in your mind, to between 10 years
>                and life, you cannot appeal that decision, do you
>                understand that?
>
> Mr. Braxton:   Yes.

(Guilty Plea Hr'g Tr. 17:11-18.)

8.      The Plea Agreement provided that "the Court has jurisdiction and authority to impose any sentence within the statutory maximum" and that the "United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence." (Plea Agreement ¶ 5.) The District Court explained to Braxton that any estimate regarding the ultimate sentence imposed "is an educated estimate" pending the final presentence report. (Guilty Plea Hr'g Tr. 15:18-16:8.) Braxton stated under oath that no one had made any promises to him other than those contained in the Plea Agreement. (Guilty Plea Hr'g Tr. 8:15-18.) Braxton acknowledged his understanding that the United States agreed to dismiss the other two counts at sentencing in exchange for his plea of guilty. (Guilty Plea Hr'g Tr. 8:23-9:1.)

9.      The Plea Agreement contained a waiver of appeal provision, stating "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined)." (Plea Agreement ¶ 6.) At the plea hearing, Judge Hudson discussed the waiver of appeal provision and advised Braxton that his "plea of guilty is final once accepted and cannot be appealed." (Plea Hr'g Tr. 12:10-12.) Braxton said he understood. (Guilty Plea Hr'g Tr. 12:12.)

10.      Greene testified that he "explained to [Braxton] that you waive nearly every right, but there could be some technical issues that you have that may be appealable - - technically appeal on those. . . . And you have 10 days [to do so]." (Evid. Hr'g Tr. 57:8-13.) During the plea colloquy, Braxton acknowledged his understanding that a "plea of guilty is final once accepted and cannot be appealed." (Guilty Plea Hr'g Tr. 12:10-12.)

11.      The Plea Agreement also contained a cooperation provision whereby Braxton agreed to cooperate fully and truthfully with the United States and provide information regarding

criminal activity. (Plea Agreement ¶¶ 12-15.) The United States reserved the right to seek any downward departure in sentence based on Braxton's cooperation. (Plea Agreement ¶ 16.) During the plea colloquy, Judge Hudson discussed the cooperation provision of the Plea Agreement with Braxton. (Guilty Plea Hr'g Tr. 9:9-19.)

12.      Before accepting Braxton's plea, Judge Hudson asked if Braxton had "[a]ny questions you want to ask me about your plea of guilty, your Plea Agreement, the constitutional rights you've waived, or the calculation of your guidelines for this offense." (Guilty Plea Hr'g Tr. 19:9-12.) Braxton said he understood everything and did not need additional time to discuss the plea with Greene. (Guilty Plea Hr'g Tr. 19:6-16.) Braxton then entered a plea of guilty to Count One of the Superseding Indictment. (Guilty Plea Hr'g Tr. 19:17-22.) The District Court accepted Braxton's plea of guilty as voluntarily, knowingly, and intelligently entered with the understanding of the nature of the charge, the consequences of the plea, and the penalty provisions he faced. (Guilty Plea Hr'g Tr. 19:34-20:4.)

### B.      Braxton's February 6, 2009 Sentencing Hearing

13.      Braxton's Presentence Investigation Report ("PSR") concluded that Braxton's offense level totaled 35, that he fell within criminal history category VI, and that his advisory guideline range fell between 292 and 365 months of imprisonment. (Sent. Hr'g Tr. 4:20-21.) On February 5, 2009, one day prior to Braxton's sentencing, Braxton, by counsel, filed objections to the PSR. (Def.'s Obj. to PSR Facts and/or Factors ("Def.'s Obj. PSR") 1-2, ECF No. 28.) Braxton raised three objections. First, Braxton objected to a two-point enhancement received for exercising management control over at least one individual who is identified in the Statement of Facts and who is a co-conspirator. (Def.'s Obj. PSR 1-2.) Second, Braxton objected to increasing his criminal history category from V to VI based on the career offender enhancement.

8

(Def.'s Obj. PSR 2-3.) Third, Braxton objected to the PSR's finding that no information warrants a departure from the sentencing guidelines. (Def.'s Obj. PSR 2-3.)

14. During the February 6, 2009 sentencing hearing, Greene confirmed that he had received a copy of the PSR and the computation of the guidelines and had discussed both documents with Braxton. (Sent. Hr'g Tr. 2:13-19.)

15. When the District Court inquired about the objections filed on Braxton's behalf relating to sentence enhancement under the guidelines, Greene articulated his objections. (Sent. Hr'g Tr. 6:5-12:2.) Greene objected, *inter alia*, to the classification of Braxton as a career offender based upon his prior state conviction for shooting from an occupied vehicle.[4] The District Court overruled all of Greene's objections to the PSR. (Sent. Hr'g Tr. 16:8-10.)

16. During argument as to sentencing, the United States made no specific sentence recommendation, but instead recommended that the District Court consider and credit Braxton with the time he served on the related state charge. (Sent. Hr'g Tr. 16:19-18:16.)

17. Prior to imposing a sentence, Judge Hudson gave Braxton an opportunity to address the court: "Mr. Braxton, anything you'd like to say, sir, before I decide what sentence is appropriate in your case?" (Sent. Hr'g Tr. 19:13-15.) In response, Braxton stated, "No, sir." (Sent. Hr'g Tr. 19:16.)

18. Considering the sentencing guidelines as advisory and after reviewing the factors under 18 U.S.C. § 3553(a), Judge Hudson sentenced Braxton to 300 months of imprisonment, a sentence within the advisory guideline range and below the statutory maximum. (Sent. Hr'g Tr. 20:5-10.)

---

[4] Greene contended that Braxton's "12/1/99 [conviction for] shooting from a vehicle [in violation of Virginia Code Ann. § 18.2-286.1] . . . is not a crime of violence as defined in section 4B1.2" of the United States Sentencing Guidelines ("U.S.S.G."). (Def.'s Obj. PSR 2.)

9

19.     At the conclusion of the sentencing hearing, the District Court addressed Braxton and stated:

> Now, Mr. Braxton, as a part of your plea agreement, you've
> waived your right of appeal as to almost every sentencing issue. If
> you feel I've done anything unlawful that's not covered by that
> waiver, let Mr. Greene know immediately because that appeal
> must be noted within 10 days of today. I suggest before you leave
> court today that you take a few minutes and talk to Mr. Greene
> about whether or not you wish to appeal. Let him know if you do
> because he needs to put that in motion right away.

(Sent. Hr'g Tr. 23:10-19.)

### C.     Braxton's Account of His Post-Sentencing Communications with Greene Regarding His Direct Appeal

20.     In affidavits filed with his § 2255 motion, Braxton avowed that after sentencing, he "instructed" Greene to file an appeal and Greene assured Braxton that he would do so or had done so. (Gregg Braxton Decl. ¶¶ 1-2, Jan. 20, 2011 ("would"); Gregg Braxton Decl. ¶¶ 5-6, October 7, 2010 ("would"); Gregg Braxton Decl. ¶¶ 1-3, June 29, 2012 (had done so)).

21.     At the December 3, 2012 evidentiary hearing, Braxton testified he did not ask Greene to file an appeal on February 6, 2009, but instead wrote a letter to Greene on February 9, 2009 asking him to file an appeal. (Evid. Hr'g Tr. 13:12-14:4.) Braxton further testified that he telephoned Greene "within the same week" he was sentenced, advised Greene "I would like him to file my appeal," and Greene "said, 'Yes.'" (Evid. Hr'g Tr. 14:8-15:5.)

22.     Braxton testified that he never heard back from Greene after the February 2009 letter and telephone call, so in March and April of 2009, Braxton wrote Greene letters asking about his appeal. (Evid. Hr'g Tr. 15:9-16:22; Gov't Ex. 1 Letter from Gregg Braxton to Reuben Greene postmarked March 20, 2009 ("Braxton March 2009 Letter"); Gov't Ex. 3 Letter from Gregg Braxton to Reuben Greene postmarked April 2, 2009 ("Braxton April 2009 Letter").)

Braxton further testified that the first time he received any written communication from Greene was in a "package" of materials he received at Williamsburg F.C.I. in preparation for the December 2012 evidentiary hearing. (Evid. Hr'g Tr. 17:1-14.) The package contained a letter from Greene to Braxton dated April 2, 2009. (Evid, Hr'g Tr. 17:15-17.)

23.     Braxton testified that he enlisted his sister, Jennifer Bussey, to contact Greene and submit an affidavit describing that visit.[5] (Evid. Hr'g Tr. 18:16-19:2.) By affidavit, Bussey stated that she contacted Greene by telephone in February 2010. (Pet'r's Ex. 1 Jennifer Bussey Decl. ("Bussey Decl.") ¶ 1, Sept. 3, 2010.) Bussey averred that she "called Greene, because [she] was checking with him to inquire about the status of Greg Braxton's appeal, which Greene stated to me and my family that he would file after Braxton was sentenced on February 7 [sic], 2009." (*Id.* ¶ 2.) Bussey affirmed that Greene advised her during the February 2010 phone conversation "that Braxton's 'direct appeal was still pending.'" (*Id.* ¶ 3.) Bussey relayed this information to Braxton. (*Id.* ¶ 4.)

24.     At the evidentiary hearing, Braxton was asked why he believed he could appeal his sentence after signing the Plea Agreement that expressly waived his right to appeal. (Evid. Hr'g Tr. 33:14-34:12.) The following exchange took place:

> Mr. Braxton:     Even though I was incorrectly careered out I still couldn't plea? I mean file a plea agreement?
>
> The Court:       You mean file an appeal?

---

[5] At the beginning of the evidentiary hearing, Braxton's attorney, Jose Aponte, advised the Court that he and Braxton disagreed as to whether Bussey should testify at the evidentiary hearing. (Evid Hr'g Tr. 4:6-17.) Mr. Aponte "made [a] strategic decision" not to call Bussey to testify whereas Braxton wanted Bussey to testify. (Evid. Hr'g Tr. 4:14-24, 5:23-24.) This Court relied on Aponte's professional judgment not to call Bussey as a witness, but allowed Bussey's affidavit to "be considered as part of the record." (Evid. Hr'g Tr. 8:3-15, admitting Pet'r's Ex. 1.)

<table>
<tr><td>Mr. Braxton:</td><td>An appeal. I'm sorry. Yes. Why did the Judge [Hudson] said I had 10 days to appeal if he knew I couldn't appeal?</td></tr>
</table>

(Evid. Hr'g Tr. 34:13-18.)

25.     Upon further questioning, Braxton reconfirmed that he knew prior to entering his plea that a possibility existed that he may qualify for career offender status. (Evid. Hr'g Tr. 35:12-14.)  Braxton was then asked why he felt career offender status "was appealable if [he] knew it wasn't an option before you went [before Judge Hudson]?" (Evid. Hr'g Tr. 35:15-17.)  Braxton replied, "Well, I didn't know it was appealable until I got back to Williamsburg F.C.I.  When [*United States v.*] *Simmons* was a change of law, I figured my plea agreement didn't hold no weight."[6]  (Evid. Hr'g Tr. 35:18-21.)

26.     In August 2010, Braxton wrote to the United States Court of Appeals for the Fourth Circuit, inquiring about the status of his appeal. (Evid. Hr'g Tr. 18:7-15.)  The "clerk's office" advised Braxton "[t]here was no appeal." (Evid. Hr'g Tr. 18:15.)

**D.     Greene's Account of His Post-Sentencing Communications with Braxton**

27.     Greene testified that he discussed with Braxton "the specific [waiver of appeal] paragraph" in the Plea Agreement. (Evid. Hr'g Tr. 45:18-20.)  When asked if Braxton "indicate[d] any dissatisfaction with waiving his right to appeal pursuant to th[e] agreement," Greene replied, "No." (Evid. Hr'g Tr. 45:15-23.)  Greene met with Braxton and federal officials after sentencing for "a debrief pursuant to his cooperation agreement." (Evid. Hr'g Tr. 49:21-50:6.)  When asked if Braxton advised Greene to file an appeal during the debriefing, Greene testified, "Not at all." (Evid. Hr'g Tr. 50:7-9.)  Moreover, Greene testified that he received no communication from Braxton during the ten-day period during which to file an appeal. (Evid.

---

[6] The holding in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc) rests on the decision in *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010). *Simmons* pertains to Braxton's second § 2255 claim, which is not before this court on referral.

H'rg Tr. 51:22-25, 52:1.) The first time Greene learned that Braxton wanted to file an appeal was when Greene received an undated letter from Braxton postmarked March 20, 2009. (Evid. H'rg Tr. 51:1-17.) According to Greene, after sentencing, Braxton was more concerned about "know[ing] how his cooperation was going to [affect sentencing]" rather than the prospect of an appeal. (Evid. Hr'g Tr. 58:20-22.)

28. Greene testified he received a second, undated letter from Braxton, postmarked April 2, 2009. (Evid. Hr'g Tr. 53:8-17.) On April 2, 2009, Greene responded to Braxton's correspondence.[7] (Evid. Hr'g Tr. 52:2-10.)

29. In his letter, Greene informed Braxton that Greene filed no appeal and the deadline to file an appeal already had passed. (Gov't Ex. 2 April 2, 2009 Letter from Reuben Greene to Gregg Braxton ("Greene Letter") 1.)

30. Greene testified that he never communicated with Jennifer Bussey or any other person about filing an appeal for Braxton. (Evid. Hr'g Tr. 54:19-25.)

        E.    **Post-Sentencing Correspondence**

31. As noted, *supra*, Braxton wrote two letters to Greene inquiring about the status of his appeal. (Braxton March 2009 Letter 1; Braxton April 2009 Letter 1.) Greene received both of these letters at least six weeks after the expiration of the ten-day period within which to note an appeal.

32. Greene promptly responded to Braxton's inquiries by letter dated April 2, 2009. (Greene Letter 1.) In the letter, Greene explained "[t]he first time I received any notification you wished to appeal was in your letter .... postmarked March 20, 2009." (*Id.*) Greene further explained in the letter that Greene "advised [Braxton] that your time limit to note an appeal was

---

[7] Greene could not recall if he had received Braxton's April 2009 letter before Greene sent his April 2, 2009 letter to Braxton. In his letter, Greene addressed both the appeal and Braxton's concerns about the guidelines enhancement. (Evid. Hr'g Tr. 52:9-23.)

13

within 10 days after your sentencing hearing[,] [t]hat hearing was on February 6, 2009 so the 10 days had long passed by the time you sent your [March 2009] letter." (*Id.*)

F.    **Greene's Version of Events Is More Credible than Braxton's**

33.    Having considered the above and having weighed the credibility of the witnesses, the Court finds that Braxton never expressly requested that Greene file an appeal of his case and never expressed an interest in appealing his case prior to the expiration of the ten-day deadline. Braxton's testimony otherwise lacks credibility for numerous reasons.

34.    First, the documentary evidence fails to support Braxton's testimony. Greene credibly testified that Braxton's initial focus went toward cooperation and a sentence reduction, a circumstance incongruent with filing an appeal. The cooperation language in the Plea Agreement is consistent with Greene's testimony.

35.    Moreover, the only documents reflecting Braxton's desire to appeal are Braxton's March and April letters, sent to Greene forty-two and fifty-five days after his February 6, 2009 sentencing. In his March 2009 letter, Braxton wrote, "I am writting [sic] you about my appeal [and] would like to know did you put my appeal in base[d] on [w]hat the Prosecutor Attorney said." (Braxton March 2009 Letter 1.) In his April 2009 letter, Braxton asked if Greene "put [his] appeal in" and "how long does an appeal take, this is the 3rd letter I have written you about my appeal." (Braxton April 2009 Letter 1.) In both letters, Braxton stated he told a detective about an unsolved murder, suggesting Braxton's focus was on a sentence reduction for cooperation. (Braxton March 2009 1; April 2009 Letter 1.)

37.    Braxton may allude to two earlier letters in his April 2009 letter to Greene, but his March 2009 letter is silent about any previous communication. Both letters fail to reference any in-person discussion between Greene and Braxton in which Greene purportedly told Braxton that

14

Greene would file an appeal. Despite Braxton's April 2009 reference to a third letter and Braxton's testimony at the hearing, the record contains no independent documentation reflecting that Braxton timely requested Greene to initiate or file an appeal prior to Greene's receipt of Braxton's March 2009 letter.

38.     Second, the content and tenor of Greene's responses to Braxton are consistent with the evidence that Greene was unaware Braxton wanted to appeal until he received Braxton's March 2009 letter.

39.     Additionally, in contrast to Greene's credible testimony that he sent his April 2, 2009 letter to Braxton, (Evid. Hr'g Tr. 52:9-15, 53:7), Braxton testified that he never received it and first saw it sometime in 2012 in a package of documents he and Aponte used to prepare for the evidentiary hearing. (Evid. Hr'g Tr. 17:6-17.)

40.     Bussey's testimony also lacks credibility and diverges from the contemporaneous record. The record reveals that Greene wrote Braxton in April 2009, informing Braxton that no appeal had been filed. Bussey's claim that she contacted Greene ten months later in 2010 regarding the status of Braxton's appeal, alongside her assertion that Greene informed her in 2010 that he had filed an appeal, lacks credibility.

41.     Braxton's unequivocal representations to Judge Hudson that he understood the ramifications of his plea, including the possibility of career offender status and the waiver of his right to appeal his conviction or sentence, support Greene's version of events and Greene's testimony that Braxton never timely requested he file an appeal. Indeed, the record suggests Braxton attempted to cooperate, but had second thoughts about his sentence and seized upon the District Court's admonition regarding the need for Braxton to timely file an appeal if the District

Court did "anything unlawful" to challenge the waiver of appeal provision after the appeal deadline passed. (Sent. Hr'g Tr. 23:13.)

42. Finally, the Fourth Circuit decided *United States v. Simmons* in 2011, yet Braxton testified at the 2009 evidentiary hearing that he first believed he could overcome his waiver in the Plea Agreement and appeal his sentence "[w]hen *Simmons* was a change of law." (Evid. Hr'g Tr. 35:19-20.)

43. Ultimately, the Court finds Greene's version of events to be consistent, credible, and supported by the contemporaneous record.

## IV. Analysis

### A. Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal

The standard set forth by the Supreme Court of the United States in *Strickland v. Washington* governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that the Sixth Amendment guaranteed a criminal defendant's right to reasonably effective assistance of counsel. *Id.* at 687. To prove a constitutional claim for ineffective assistance of counsel, a convicted felon must first show that his or her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, a convicted defendant must demonstrate actual prejudice from the deficiency. *Id.* at 694.

In conjunction with *Strickland*, the decision of the Supreme Court in *Roe v. Flores-Ortega* governs ineffective assistance of counsel claims for failure to file a notice of appeal. *See* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this

16

> particular defendant reasonably demonstrated to counsel that he
> was interested in appealing.

*Id.* at 480. This determination must take into account "all the information counsel knew or

should have known." *Id.* (citing *Strickland*, 466 U.S. at 690).

If a consultation about appeal has occurred, counsel performs deficiently only by failing

to follow the defendant's express instructions with respect to an appeal. *Id.* at 478. "[A]

criminal defense attorney's failure to file a notice of appeal when requested by his client deprives

the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the

lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992

F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when

unequivocally instructed to do so by his client, even if doing so would be contrary to the Plea

Agreement [because the defendant has waived his right to appeal] and harmful to the client's

interests."[8] *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

If the attorney received no express instruction to file a notice of appeal, and no

consultation has occurred, a court must determine "whether counsel's failure to consult with the

defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. The

prejudice prong of *Strickland* requires "that counsel's deficient performance must actually cause

the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for

counsel's deficient performance, he would have appealed, counsel's deficient performance has

---

[8] The Court notes that a split of authority exists on the issue of whether a lawyer is *per se* ineffective when the lawyer fails to file a notice of appeal despite his client's wishes, even when the defendant has waived his right to appeal and has no meritorious issues to raise. A minority of circuits hold that counsel is not *per se* ineffective for honoring a client's written waiver of appeal instead of the client's later oral instruction to appeal. *See, e.g., Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008); *United States v. Mabry*, 536 F.3d 231, 240-42 (3d Cir. 2008); *see also United States v. Arevalo*, Nos. 5:07-153-JMH-JGW, 09-7071-JMH-JGW 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010). Recognizing that this non-binding precedent exists, this Court nonetheless adheres to the principles announced by the Fourth Circuit. *See United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007).

not deprived him of anything, and he is not entitled to relief." *Id.* at 484 (citation omitted).

"Thus, to prevail on an ineffective assistance claim for failing to note an appeal, a defendant need not 'demonstrate that his hypothetical appeal might have had merit,' but rather only that 'but for counsel's deficient conduct, he would have appealed.'" *Jiminez v. Vaughan*, No. 3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5, 2008) (quoting *Flores-Ortega*, 528 U.S. at 486).

### B. Braxton's Claim Fails

#### 1. Braxton Did Not Timely Instruct Greene to File an Appeal

The record demonstrates that Braxton did not instruct Greene to file an appeal within the ten-day period following his sentencing. Braxton's testimony, that he timely asked counsel to file an appeal and Greene advised him that he had done so, lacks credibility for the reasons discussed above. *See supra* Part III.F. Conversely, Greene credibly testified that Braxton never instructed him to file an appeal in a timely manner.

Braxton's inconsistent statements affected his credibility. In his October 7, 2010 affidavit, Braxton testified that "[a]fter sentencing I instructed Greene to file a notice of appeal" and Greene "informed me at sentencing that he would file the appeal on my behalf." (Braxton Decl. ¶ 5, Oct. 7, 2010.) In contrast, Braxton testified at the evidentiary hearing that he instructed Greene to file an appeal by letter three days after sentencing, thus making it impossible for Greene to advise Braxton "at sentencing" he would do so. (Evid. Hr'g Tr. 13:12-14:4.) Braxton's evidence that Greene assured him he had filed an appeal also contradicts Greene's more consistent and cogent testimony to the contrary.

Further, Braxton's own evidence suggests that he decided in March 2009 that he wanted to file an appeal and wrote letters to Greene weeks after the appeal deadline asking if Greene

"put my appeal in" to create the appearance that he timely requested that Greene file an appeal. (Braxton March 2009 Letter 1.) Considering Greene's more credible testimony, the evidence indicates that Braxton asked Greene by letters in March and April 2009 the status of an appeal that Braxton never requested.

The contemporaneous record supports Greene's testimony.

### 2. Greene Had No Duty to Consult with Braxton Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Greene had a duty to consult with Braxton about an appeal. *Flores-Ortega*, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id.* at 480. If the defendant pled guilty, the court should consider whether the defendant received the sentence bargained for in a Plea Agreement and whether the defendant waived some or all rights to appeal in the Plea Agreement. *Id.*

The Court finds that Greene had no duty to consult with Braxton about an appeal. First, the record demonstrates that a rational defendant in Braxton's position would not have pursued an appeal. Judge Hudson inquired into Braxton's understanding of the plea, thoroughly questioned Braxton about pleading guilty, and explained in detail the rights Braxton was waiving and the effects of such a plea. Following that exchange, Braxton pled guilty pursuant to a

written plea agreement and waived his right to appeal any sentence within the statutory maximum or the manner in which that sentence was determined. Braxton ultimately received a sentence within the advisory guideline range and below the statutory maximum.

After addressing and overruling Braxton's objections to the Presentence Report, Judge Hudson adopted the guidelines as computed by the probation officer. Judge Hudson selected Braxton's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. *United States v. Evans*, 526 F.3d 155, 161-62 (4th Cir. 2008). Braxton's sentence was also within the advisory guideline range and thus is presumptively reasonable. *United States v. Mendoza-Mendoza*, 597 F.3d 212, 217 (4th Cir. 2010). Based on these considerations, Braxton cannot demonstrate that a rational defendant would have wanted to appeal his sentence.

Braxton likewise has failed to demonstrate that he showed any interest in filing an appeal during the ten-day appeal period. Immediately after sentencing Braxton, Judge Hudson admonished Braxton that if he desired to note an appeal, he should promptly advise Greene to do so that day. Although Braxton and Greene remained in the building after sentencing for a debriefing aimed at a sentence reduction for cooperation, the record fails to show that Braxton asked Greene to appeal at that time. As noted *supra*, III.F. & IV.B.1., Braxton's testimony that he told Greene to file an appeal within the ten-day appeal period lacks credibility. On the other hand, Greene testified credibly that he first became aware of Braxton's intention to appeal in March 2009, long after the expiration of the ten-day appeal period. Accordingly, the Court finds that Greene had no duty to consult with Braxton regarding an appeal.

## V. Conclusion

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court DISMISS Braxton's ineffective assistance of counsel claim and DENY that portion of his § 2255 motion alleging ineffective assistance of counsel regarding the filing of an appeal.

Braxton is ADVISED that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order denying the motion. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a District Court adopting the magistrate's findings").

Let the Clerk send a copy of the Report and Recommendation to all counsel of record and to the Honorable Henry E. Hudson.

And it is so ORDERED.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 5- 30 -13

21